IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| PANDORA MCFADDEN, | ) |
| Plaintiff, | ) |
| v. | ) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) Civil Case No. GLS 19-629 |
| Defendant/Third-Party Plaintiff, | ) |
| v. | ) |
| C T STANLEY AND SON, INC., | ) |
| Third-Party Defendant. | ) |

**MEMORANDUM OPINION**

Pending before this Court are the following motions and responses thereto: (1) a motion for summary judgment filed by Third-Party Defendant C T Stanley and Son, Inc. ("Stanley") (ECF No. 35) ("Stanley's Motion"); (2) a motion for summary judgment filed by Defendant Washington Metropolitan Area Transit Authority ("WMATA") against Plaintiff Pandora McFadden (ECF No. 36) ("WMATA's Motion"); and (3) WMATA's "Motion for Leave to File Summary Judgment against Third-Party Defendant C T Stanley and Son, Inc." (ECF No. 42) ("Motion for Leave"). The issues have been fully briefed. (ECF Nos. 40, 41, 42, 43, 44, 45, 46). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* L.R. 105.6. For the reasons set forth below, WMATA's summary judgment motion against Plaintiff is **GRANTED**; Third-Party Defendant Stanley's summary judgment motion is **DENIED** as moot; and WMATA's "Motion for Leave to File Summary Judgment" Against Third-Party Defendant Stanley is **DENIED** as moot.

1

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed her Complaint on January 2, 2019, in the Circuit Court for Prince George's County, Maryland, alleging that she suffered severe injuries following a fall on January 26, 2016. (ECF No. 1-7, "Complaint," ¶ 4). Plaintiff asserts that WMATA was negligent for failing to maintain the Cheverly Station parking lot in a safe condition, and by failing to warn her about the dangerous conditions therein that allegedly caused her fall. (Complaint, ¶ 8). Defendant WMATA removed the case to this Court and filed its Answer on February 27, 2019. (ECF No. 2, "WMATA's Answer").

Thereafter, on June 10, 2019, WMATA filed a Third-Party Complaint against Stanley seeking: (a) full indemnity against Plaintiff's claims pursuant to the terms of its contract with Stanley; and (b) indemnity and contribution from Stanley under common law. WMATA contends that Plaintiff's injuries were the result of Stanley's negligence. (ECF No. 11, "Third Party Complaint," ¶¶ 4, 7). Stanley filed its Answer on June 28, 2019. (ECF No. 16, "Third-Party Defendant Stanley's Answer").

This case was referred to the undersigned for All Further Proceedings on September 19, 2019. (ECF No. 22). The aforementioned summary judgment motions were filed by WMATA and Stanley at the close of discovery.

### B. Factual Background

1. <u>January 26, 2016 Incident</u>

The following facts are undisputed. The instant case stems from a January 26, 2016 incident that allegedly occurred in the parking lot of the Cheverly Metrorail Station ("the Premises"), which is owned by WMATA. At approximately 5:00 a.m. that day, Plaintiff arrived

at the Premises to begin her commute to work. (ECF No. 36-2, WMATA's Statement of Material Facts Not in Dispute; ECF No. 43-3, pp. 38-39; Deposition of Pandora McFadden ("McFadden Dep."): 47:18, 51:17-20). Plaintiff parked her car next to a pile of snow, and at 5:05 a.m., as she began to walk towards the entrance to the Metro Station, she slipped and fell to the ground. (ECF No. 36-4, Video: 00:33-00:42; McFadden Dep.: 65:1-66:20). According to Plaintiff, she slipped on ice.[1]

    2. Contract for Snow & Ice Removal

The following facts are undisputed. In January 2016, Third-Party Defendant Stanley entered into a contract with WMATA to perform snow and ice removal services ("the Contract") at several of WMATA's facilities in Maryland. (ECF No. 35-3, p. 12, Contract). Under the Contract, WMATA was responsible for directing Stanley where and how to provide snow removal services. (ECF No. 35-3, p. 22, Deposition of Sheri Eley ("Eley Dep."): 12:1-13). Per WMATA policy, a WMATA monitor was required to log the arrival and departure of Stanley's drivers from WMATA facilities, (Eley Dep.: 31:10-25), and inspect their work for compliance with the Contract. (ECF No. 43-3, p. 92, Deposition of WMATA Corporate Representative Paul Kram ("Kram Dep."): 27:5-24, 28:1-15). WMATA's monitor was responsible for communicating any dissatisfaction with Stanley's snow removal work to Sheri Eley, WMATA's Contracting Offices Technical Representative assigned to the Contract. (Eley Dep.: 33:24-25, 34:1-22). Under the Contract, the responsibility for salting WMATA facilities fell to WMATA personnel. (Eley Dep. 29:9-25). At WMATA's request, on January 24, 2016, and January 25, 2016, Stanley provided snow removal services at the Premises following a snow fall that occurred between January 21,

---

[1] The record reflects that Plaintiff has offered two slightly different descriptions of the substance that caused her fall: she slipped on "black ice." (ECF No. 43-3, p. 10, Plaintiff's Answers to Defendant WMATA's Interrogatories); or she slipped on "ice, snow." (McFadden Dep. 66:15-20).

and January 24, 2016.  (ECF No. 35-3, pp. 71-74, WMATA's Resp. to Stanley's Req. for Produc. of Docs).

The following facts are in dispute.  First, there is a question whether "de-icer" was applied to the Premises prior to Plaintiff's fall.  According to Plaintiff, WMATA's "Snow/Ice Removal" reports did not indicate that de-icer was applied to the Premises between January 21 and January 24, 2016.  (Kram Dep.:  42-44:1-2).  Third Party Defendant Stanley agrees with Plaintiff that Mr. Kram's testimony and Ms. Eley's testimony reflect that no de-icer was applied.  (Stanley's Motion, p. 5). WMATA counters that a January 25, 2016 photograph of the Premises shows "that [the premises] ha[d] been salted."  (Kram Dep.: 19:6-25, 20:1-25).

Also in dispute is whether the Premises was adequately plowed to remove the snow from the Premises.  To support its argument that the snow was adequately removed from the Premises before the incident, Stanley argues:  (1) that a January 25, 2016 photograph of the Premises depicts this, (Stanley's Motion, p. 4; ECF No. 35-3, p. 77, January 25, 2016 Photograph of Premises); (2) a form, completed by one of its drivers, reflected that Stanley was signed out "per Sheri Eley," (ECF No. 35-3, p. 74); and (3) that Sheri Eley testified that Stanley's invoices for work at the Premises were approved, ("I wouldn't have an invoice if they didn't complete something;" "[the work] was completed, yes, satisfactorily.").  (Eley Dep.: 53:2-25, 54:1-7).

WMATA points to the same photograph of the Premises relied upon by Stanley, arguing that it clearly depicts that Stanley failed to fully clear the premises of snow; that there was "still snow in the parking lot and it require[d] additional detail work."  (Kram Dep.: 15:22-25, 16:1-25).  Kram also testified that the January 25 photo shows "evidence that [the premises] ha[d] been salted."  (Kram Dep. 19:6-25, 20:1-25).

4

## II.     STANDARD OF REVIEW

WMATA and Third-Party Defendant Stanley have moved for summary judgment. Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted).  The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits. *Celotex Corp.,* 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).  To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions.  *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255).  A mere scintilla of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C 1966)).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

**III.   ANALYSIS**

WMATA moves for summary judgment against Plaintiff on the following grounds: (1) it enjoys sovereign immunity from challenges to the manner in which it carries out discretionary maintenance functions, including the removal of snow and ice from the Premises; (2) it enjoys sovereign immunity from challenges to its decisions whether to warn of dangerous conditions on the Premises; (3) Plaintiff assumed the risk by parking in a part of the premises that had not been cleared of snow; (4) Plaintiff was contributorily negligent for parking her vehicle in an uncleared portion of the Premises; and (5) Plaintiff cannot prove, as a matter of law, that WMATA breached any duty owed to her "in light of the size of WMATA's system."  (WMATA's Motion, pp. 2-11; WMATA's Reply, pp. 4-12).

1. Sovereign Immunity

WMATA contends that it is entitled to summary judgment on Plaintiff's negligent maintenance and failure to warn claims because both are barred by WMATA's sovereign immunity.  (Motion, p. 6; Reply, pp. 4-8).

   *a. Establishment of WMATA and Evolution of Sovereign Immunity Doctrine*

Maryland, Virginia, and the District of Columbia created WMATA via an interstate compact ("the Compact"), so that WMATA would provide transportation in the Washington D.C. metro area.  *Delon Hampton & Assocs. v. Wash. Metro. Area Transit Auth.*, 943 F.2d 355, 357-59 (4th Cir. 1991).  The Compact between the three governments established WMATA as an interstate agency and instrumentality of each signatory.  *Id.* at 359.  Thus, WMATA "enjoys the same rights and privileges as a state, including sovereign immunity."  *Bailbey v. Wash. Metro. Area Transit Auth.*, Civ No. CBD 15-1731, 2016 WL 1391820, at *5 (D. Md. Apr. 8, 2016); *see also Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 206 (4th Cir. 2002).

WMATA enjoys a unique type of sovereign immunity with respect to certain claims. *Pierce v. Wash. Metro. Area Transit Auth.*, Civ. No. DKC 09-1917, 2010 WL 4485826, at *3 (D. Md. Nov. 9, 2010). However, its sovereign immunity is not absolute. The extent of WMATA's sovereign immunity is outlined in Section 80 of the Compact, which states, in pertinent part:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees, and agents committed in the conduct of any proprietary function, in accordance with the applicable signatory (including rules of conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

Md. Code Ann., Transp. § 10–204(80) (2010). Put another way, WMATA retains its immunity for torts arising out of its exercise of governmental functions but waives its sovereign immunity for torts it commits when exercising its proprietary, i.e., non-governmental functions. *Smith, supra*, at 206; *Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1058-59 (2010).

To determine what constitutes a "governmental act," courts engage in a two-part analysis. In part one of the analysis, a court must determine if the challenged conduct was a "quintessential governmental function," such as conduct involving law enforcement. *Smith*, *supra*, 290 F.3d at 207; *see also Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 363-64 (D.D.C. 2020). If so, WMATA's sovereign immunity bars the claim. *Smith*, *supra*, 290 F.3d at 207. However, if an act or the conduct is not quintessentially governmental, i.e., it is proprietary (non-governmental), a court must proceed to the second step in the analysis and determine whether WMATA was engaged in a discretionary act or a ministerial act. *Id*. Courts have found that a "discretionary act" is analogous to an agency's governmental functions for which it retains immunity. *Id.* Conversely, a "ministerial act" falls within an agency's proprietary functions for which it waives immunity. *Id.*, at 208. Courts have explained that a discretionary act involves

7

"judgment, planning, or policy decisions," whereas a non-discretionary, i.e. a ministerial act, involves the "enforcement or administration of a mandatory duty at the operational level." *Pierce*, *supra*, at *4 (quoting *KiSKA Constr. Corp. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1159 (D.C. Cir. 2003).

To distinguish a discretionary act from a proprietary one, a court asks two questions. First, whether a "statute, regulation, or policy **specifically** prescribes a course of action for an employee to follow." *Pierce*, *supra*, at *4 (emphasis added) (quoting *KiSKA Constr. Corp.*, 321 F.3d at 1159). If the course of action is prescribed, then the challenged conduct is not discretionary and WMATA is not immune. *Id.* Second, a court examines if the exercise of discretion is "grounded in social, economic, or political goals." *Pierce*, at *4. If WMATA's exercise of discretion is "grounded in social, economic, or political goals, then sovereign immunity applies." *Tinsley v. Wash. Metro. Area Transit Auth.*, 55 A.3d 663, 674 (Md. 2012). Such activity falls within the "discretionary function exception." *Smith*, 290 F.3d at 207. Put another way, "day-to-day operational decisions of government are entitled to immunity . . . so long as the choices are susceptible to policy analysis." *Id.* at 208 (citation omitted).

      b. *Negligent Maintenance*

WMATA contends that Plaintiff's negligent maintenance claim is barred by the doctrine of sovereign immunity because its snow and ice removal and remediation practices are discretionary acts grounded in social, economic and political policy judgments. (WMATA's Motion, p. 6). Plaintiff counters that WMATA's snow and ice removal practices are non-discretionary because they are circumscribed by a provision of the International Property Maintenance Code ("IPMC"), and therefore, sovereign immunity does not bar Plaintiff's claim. (ECF No. 43-1, "Opposition," pp. 21-22, 25-27). The Court agrees with WMATA.

As a preliminary matter, Plaintiff contends that the IPMC mandates how WMATA is to maintain the Premises; specifically, that it maintain "[a]ll sidewalks, stairs, driveways, parking spaces and similar areas . . . free of unsafe obstructions or hazardous conditions." *See* Prince Georges Cnty., Md. Code, Housing Code, § 13-118(b) (2021).  But, this provision of the IPMC applies only to residential property, is not applicable to WMATA's maintenance of the Cheverly Station parking lot, and therefore, does not establish a mandatory directive that restricted WMATA's discretion when conducting snow and ice removal operations at the Premises.[2]

In this case, WMATA's snow removal and remediation efforts do not involve a quintessential government function such as police activity, prosecutorial decision making, or firefighting.  *Bailbey* at *6.  Therefore, the Court must determine whether WMATA's snow and ice removal decisions are a discretionary or ministerial activity.

Here, there is no evidence before the Court that a statute, regulation, or policy prescribed the manner in which WMATA removed snow and ice from the Cheverly Station parking lot. Because WMATA has discretion in the design and implementation of its snow and ice remediation procedures, the issue before the Court is whether this discretion is grounded in social, economic, or policy goals.  *Pierce*, *supra*, 2010 WL 4485826 at *4.

Another court in this District has previously held that WMATA's snow and ice removal decisions are based on economic and policy goals, and therefore, are immune from suit.  *Bailbey*, *supra*, 2016 WL 1391820, at *6.  In *Bailbey*, the plaintiff slipped and fell on a snow-covered sidewalk and sustained serious injuries.  Plaintiff sued both the Prince George's County government and WMATA, alleging that each entity had a duty to safely maintain the sidewalk

---

[2] The provisions of the IPMC cited by the Plaintiff are incorporated into Section 13 the Prince George's County Code of Ordinances.  The Scope of Section 13 of the Code of Ordinances is limited to "all existing *residential* structures and premises."  Prince Georges County., Md. Code, Housing Code, § 13-107(b) (2021) (emphasis added).

where he fell by keeping it free from snow and ice. Defendant WMATA moved for summary judgment, asserting that its snow removal decisions were discretionary maintenance functions and it was therefore entitled to sovereign immunity. *Id.* at \*5.

The court in *Bailbey* opined that when WMATA determines when and how to remove snow and ice, WMATA is balancing safety concerns against its ability to maintain transportation operations, and the frequency with which it plows and salts its parking lots against its budget. *Bailbey*, *supra*, 2016 WL 1391820, at \*6; *see also Tinsley*, 55 A.3d at 677 (finding WMATA entitled to sovereign immunity where decision to clean station floor and allow water to evaporate in station instead of mopping it, was based on economic and policy considerations). Thus, to the extent Plaintiff is challenging WMATA's snow and ice removal procedures, Defendant WMATA is immune from suit. *Bailbey*, 2016 WL 189180, at \*6.

In the alternative, Plaintiff asserts that she is not challenging WMATA's snow removal procedures, such as the number of snowplows WMATA used to remove snow and ice from the Cheverly Station parking lot, but rather the negligent implementation of WMATA's snow removal policies by WMATA personnel at the Premises. (Opposition, pp. 28-29). WMATA counters that this is a distinction without a difference, arguing that it is immune from suits challenging the manner in which WMATA carries out discretionary maintenance functions because such decisions are based on upon policy and economic considerations. (WMATA's Reply, p. 3).

The Court does not find Plaintiff's negligent implementation argument persuasive as Plaintiff is unable to identify a specific policy or directive that WMATA's employees failed to follow when they conducted snow and ice removal at the Cheverly Station parking lot. Thus, as is the case here, in the absence of any evidence of a policy or directive limiting the discretion of WMATA employees to remove snow and ice at the Premises, WMATA is entitled to sovereign

immunity.  *Compare Robinson v. Wash. Metro. Area Transit Auth.*, 858 F. Supp. 2d 33, 37-38 (D.D.C. 2012) (WMATA's sovereign immunity did not bar suit alleging bus driver was negligent for failing to follow WMATA's express safety directives), *with WMATA v. Barksdale-Showell*, 965 A.2d 16, 22 (D.C. 2009) (finding sovereign immunity barred negligent maintenance claim alleging WMATA's employees failed to adequately maintain, repair, inspect, or operate escalators at a Metro station that became wet and icy because WMATA's internal operating procedures vested employees with an element of discretion when responding to such hazards).

### c. Failure to Warn

Turning to Plaintiff's failure to warn claim, Plaintiff argues that WMATA's sovereign immunity does not bar tort actions alleging negligence for failure to warn of a hazard.  (Opposition, pp. 17-18).  WMATA counters that its decision whether to issue warnings to its patrons falls within the discretionary function exception and is therefore barred by WMATA's sovereign immunity.  (WMATA's Reply, p. 4).  Here too, the Court agrees with WMATA.

As an initial matter, another court in this District has previously held that WMATA's sovereign immunity shields it from failure to warn claims under the discretionary function exception, particularly where the danger is not hidden.  *See Pierce*, 2010 WL 4485826, at *5 n.6 (noting "any failure to warn is discretionary," especially where the danger is not hidden).  The Fourth Circuit's decisions holding that the duty to warn is discretionary can broadly be divided into two categories.  The first category encompasses "cases where the decision to warn is discretionary in light of the particular agency's statutory purpose," *Parrish v. United States*, 157 F. Supp. 3d 434, 445 (E.D.N.C. 2016) (citing *Minns v. United States*, 155 F.3d 445 (4th Cir. 1998)), while the second category covers "cases where the decision to warn is discretionary in light of an

11

immediate hazard." *Id.* (citing *Smith*, *supra*, 290 F.3d 201).[3] A brief examination of these two categories of cases is instructive.

The Fourth Circuit's decision in *Minns v. United States* is emblematic of cases that fall within the first category. In *Minns*, appellants alleged that the military negligently administered "investigational" and defective drugs to three servicemen that caused their children to be born with serious birth defects. 155 F.3d at 446. Finding that the military's decision whether to warn the soldiers and their families of any potential side effects of these drugs was discretionary, the *Minns* court explained that such a warning implicated other military decisions, including whether to risk alerting the enemy about war preparations and whether to give a warning that might be harmful to unit cohesion. *Id.* at 452. Similarly, in *Wood v. United States*, the Fourth Circuit held that a failure to warn claim brought by a Sherriff's deputy injured during a training exercise on a Navy base was barred by the discretionary function exception. 845 F.3d 123, 130-31 (4th Cir. 2017). The Fourth Circuit explained that the Navy's decision not to warn trainees about the condition of its training facility fell within the Navy's "overarching policy of balancing open civilian use of its facility, civilian safety, military preparedness, and costs." *Id.*

*Smith v. Washington Metropolitan Area Transit Authority* is representative of cases in the second category, where the decision to warn is discretionary in light of an immediate hazard. 290

---

[3] A third category of cases from the United States Court of Appeals for the District of Columbia Circuit hold that WMATA's decision whether to warn is discretionary, where the decision is grounded in design considerations. *See Abdulwali v. Wash. Metro. Transit Auth.*, 315 F.3d 302, 305 (D.C. Cir. 2003) (sovereign immunity barred negligence claim alleging bulkhead signs did not adequately warn passengers of dangers of traveling between cars on moving train because the design of the signs was a discretionary decision from which WMATA was immune from suit); *see also Szadkowski v. Wash. Metro Area Transit Auth.*, No. 96-2353, 1998 WL 116177, at *2 (4th Cir. 1998) ("WMATA's decision whether to post a warning sign or a fence is a design decision for which it is immune from suit."); *cf. Baum v. United States*, 986 F.2d 716, 722 (4th Cir. 1993) (National Park Service's decisions regarding the design and construction of guard rails on parkway were immune from suit under the FTCA). Here however, Plaintiff's alleged failure to warn claim cannot be reasonably construed as alleging negligent design.

F.3d 201. In *Smith*, a WMATA passenger suffered a fatal heart attack after walking up a stationary escalator at a Metro station. 290 F.3d at 203. At the time of the passenger's heart attack, WMATA was utilizing one of the three station escalators as a stationary walker because the other two escalators were inoperative. *Id.* The deceased's estate sued WMATA, alleging it had negligently failed to warn its patrons of the inoperative escalators at the station. *Id.* at 204. The Fourth Circuit held that WMATA's decision not to warn riders of the inoperable escalators was protected by the discretionary function exception. 290 F.3d at 210 (citing *Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1997) ("Decisions concerning the proper response to hazards are protected from tort liability by the discretionary function exception.")). Finding that "no specific statute or regulation mandated any certain course of action" by WMATA to warn passengers of the emergency situation—i.e. by placing signs or personnel to warn patrons of the inoperative station escalators and direct them to the elevator—the Court determined that the "duty to warn of this open and obvious hazard [was] discretionary and exempt from an action in tort." *Id.* (citation omitted).

Similarly, in *Williams v. United States*, the Fourth Circuit held that the discretionary function exception insulated the United States from tort liability for its failure to warn appellant of a puddle of water that accumulated during a torrential rain storm in the lobby of a building leased by the United States Department of Justice. 50 F.3d 299, 303, 310-11 (4th Cir. 1995). Notwithstanding its conclusion that the use of an independent contractor by the United States immunized it from liability, the Court held that with "respect to posting warning signs in this specific case, the courts recognize that this falls within the purview of the discretionary function exception." *Id.* at 310 (citing *Kiehn v. United States,* 984 F.2d 1100, 1103 (10th Cir. 1993) (noting in a failure to warn claim that "[t]he decision whether or not to post warning signs . . . is clearly discretionary as it 'involves an element of judgment or choice.'"); *see also Lesoeur v. United*

13

*States,* 21 F.3d 965, 969–70 (9th Cir. 1994) (finding, in a failure to warn context, that the United States' decision not to post warning signs fell within the scope of the discretionary function exception)).

This case is similar to the second category of cases where the decision to warn is discretionary in light of an immediate hazard. Plaintiff has not identified a specific statute or regulation mandating a certain course of action by WMATA to warn patrons of the conditions at the Cheverly Station parking lot; therefore, WMATA's decision whether to issue warnings to patrons is subject to judgment. The question before the Court then, is whether WMATA's exercise of its discretion in responding to the snow fall at the Premises was grounded in social, economic, or policy goals. *Baum*, 986 F.2d at 723. In undertaking this inquiry, the Court "is to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect to be inherently grounded in considerations of policy." *Smith*, 209 F.3d at 208. Put differently, if the decision at issue is susceptible to policy analysis and is "grounded in social, economic, or political goals of the statute and regulation" the decision is entitled to immunity. *Id.* (internal citation omitted).

Here, as in *Smith*, there was no statutory or regulatory mandate specifically governing WMATA's actions in response to the snow and ice at the Cheverly Station parking lot, leaving WMATA's personnel to determine whether and how to warn patrons of the conditions at the Premises—decisions that carried potential political and economic costs. For instance, WMATA likely had to determine whether to deploy personnel or place signs to warn patrons of the conditions at the Cheverly station parking and balance such decisions against staffing and budgetary constraints. Therefore, WMATA's decision whether to warn of the conditions at the

Cheverly lot was discretionary—subject to competing social, economic, and political policy goals—and WMATA is immune from suit pursuant to the discretionary function exception.

Plaintiff counters that WMATA's sovereign immunity does not apply to a failure to warn claim in a tort action. (Opposition, p. 18). To support this proposition, Plaintiff relies on the District of Columbia Court of Appeals' decision in *Barksdale-Showell*. 965 A.2d 16. In that case, Ms. Barksdale-Showell filed a complaint alleging, in part, that WMATA was negligent in failing to warn her of wet conditions in a Metro station. *Id.* at 19. Although WMATA did not raise a sovereign immunity defense to Ms. Barksdale-Showell's failure to warn claim at trial or on appeal, the Court of Appeals proceeded to address it, explaining that a valid claim of sovereign immunity would deprive the court of subject-matter jurisdiction. *Id.* at 21 n.4. Noting that "WMATA did not provide a policy rationale for its decision not to warn at trial, in its brief on appeal, and declined to provide one at oral argument," the Court concluded that WMATA's lack of a policy underlying its decision not to warn was "not the kind of 'social, economic, or political' decision that Congress intended to immunize from suit." *Id.* But here, unlike in *Barksdale-Showell*, WMATA contends that its decision whether to warn patrons of the conditions at the Cheverly Station parking lot was discretionary and grounded in competing policy concerns. (Reply, p. 7). Because WMATA's duty to warn was discretionary, it is exempt from an action in tort and Plaintiff's negligent failure to warn claim must fail.

2. Remaining Summary Judgment Arguments

Because this Court will grant WMATA's Motion based on the aforementioned grounds, this Court need not address the merits of WMATA's arguments on the remaining issues.

In addition, Third-Party Defendant Stanley opposes WMATA's motion for leave to file for summary judgment against it. Stanley asserts that WMATA's summary judgment motion "is

nothing more than a veiled attempt to make arguments that WMATA could have made in [its opposition to Stanley's initial summary judgment motion against it]." (ECF No. 44, p. 2). Because the Court is granting WMATA's summary judgment motion against Plaintiff, there is no need for the Court to consider this argument.

## IV.   CONCLUSION

For the foregoing reasons, WMATA's Motion for Summary Judgment is **GRANTED** (ECF No. 36), Stanley's Motion for Summary Judgment is **DENIED** as moot (ECF No. 35), and WMATA's Motion for Leave to File Summary Judgment against Stanley is **DENIED** as moot, (ECF No. 42).

A separate Order will follow.

Dated:  May 24, 2021                                                                       /s/
                                                                    The Honorable Gina L. Simms
                                                                    United States Magistrate Judge